THE METROPOLITAN STREET RAILWAY COMPANY v. JOHN SLAYMAN.

No. 12,120.   (68 Pac. 628.)

SYLLABUS BY THE COURT.

STREET-RAILWAY—*Accident at Crossing* — *Contributory Negligence* — *Question for Jury*. Where the driver of a heavy wagon attempts to cross the tracks of a street-car company at night, and before doing so looks both ways upon the track and is unable to discover any car approaching, but does see the headlight of one which he believes to be moving toward him at a distance of 300 or 400 yards; and where the evidence justifies the jury in determining that such car was traveling at an unusual, reckless and dangerous rate of speed, which fact such driver did not and could not know before starting to drive across such track; and when, by reason of such high rate of speed and the failure of those in charge of the car to make any effort to stop it, such wagon is

struck and the driver is injured, the question as to whether the latter was so far guilty of contributory negligence that he may not recover is one of fact for the jury, under proper instructions of the court.

Error from Wyandotte court of common pleas; W. G. HOLT, judge.   Opinion filed April 5, 1902.   Affirmed.

*Miller, Buchan & Morris*, for plaintiff in error.
*True & Sims*, for defendant in error.

The opinion of the court was delivered by

ELLIS, J.:  On the 27th day of December, 1899, the plaintiff below was driving a heavy wagon along the Southwest boulevard, in the city of Rosedale.   The street-railway company operates a line of its road on that boulevard, and just as it became dark on the day named one of its cars, manned by an extra motorman and conductor, was "running in" after having made the last trip for the day.   The plaintiff below testifies that he had been driving for some distance along one side of the street; that the road was rough, and he thought it would be smoother on the other side, so, after looking both ways upon the track and seeing nothing but the headlight of a car, which appeared to be 300 or 400 yards behind him, he attempted to pull his team across the track, and had nearly accomplished the endeavor when the rear end of his wagon was struck with great force by the street-car, the light of which he had seen.   The horses were thrown down, he was thrown off upon the ground and seriously injured, while the wagon was considerably broken up.   For the injury thus sustained, he brought this action in the court of common pleas of Wyandotte county, and recovered judgment, to re-

verse which proceedings in error were instituted in this court.

The negligence charged against the street-railway company in the petition is as follows :·

"That the defendant, by and through its agents, servants and employees in charge of said car, unnecessarily, carelessly, negligently, maliciously and wantonly ran said car at the high, reckless and dangerous rate of speed of about twenty miles an hour, without ringing any bell, sounding any alarm, or in any way warning the plaintiff of the approach of said car, and without attempting to check the speed thereof after seeing and knowing the plaintiff's dangerous position on the track.

The contention of the street-railway company is that the testimony of defendant in error shows him to have been guilty of contributory negligence, and that the court ought to have declared the same as a proposition of law, and the first and principal error assigned is the failure of the court so to do. After reciting the statements of Mr. Slayman as to his discovery of the headlight of the car just before attempting to cross the tracks, and his belief as to the distance the car then was from him, counsel for the street-railway company select from his testimony the following extracts which they regard as tending to support their claim of contributory negligence :

"Ques. What did you do, Mr. Slayman, if anything, before you attempted to go across that track? Ans. Why, I looked both ways for cars.

"Q. Did you see any car approaching from the east? A. No, sir.

"Q. Did you see any car approaching from the west? A. No, sir.

"Q. Did you see anything that would indicate that a car was coming? A. I seen a light from the west.

"Q. Coming from the west? A. Yes, sir.

Railway Co. v. Slayman.

"Q. What did you think it was? A. Well, I thought it was a car coming.

"Q. Thought it was a headlight? A. Yes, sir.

. . . . . . . . . . . .

"Q. Now, what else did you do, if anything, in attempting to cross that track? A. Well, when I started to go across, I looked both ways and kept urging my team to get across onto the other track.

"Q. Did you see any car approaching at that time? A. No, sir.

"Q. After you got up onto the track, did you see what had become of that approaching headlight? A. I saw it got up onto me close.

"Q. Did you try to get out of its way? A. Kept jerking and urging my team right along.

"Q. Did you get out of its way? A. I got just about—well, it came pretty near clearing. It just struck the hind end of the wagon.

. . . . . . . . . . . .

"Q. What did you cross the street-car tracks at Minnie avenue for, when the east side was your proper way down to the city? A. Crossed over onto that side to get a smoother road.

"Q. It was all paved along there, wasn't it? A. It was macadamized; yes, sir.

"Q. Macadamized on the east and west side both, isn't it, both sides? A. Yes, but it was rough rocks, and I thought I would pass over onto the west side of the tracks.

"Q. There was no teams or obstructions to keep you from going on the east side of the track? A. No, sir.

. . . . . . . . . . . .

"Q. Before you started across you looked to the north to see if there was a car coming? A. I looked both ways—kept looking all the time.

"Q. And when you started across you did not see any car? A. When I started across I saw a light.

. . . . . . . . . . . .

"Q. Did you notice how far down the street it was? A. Yes, sir.

"Q. You thought it was far enough away that you had plenty of time to cross? A. Yes, sir.

"Q. But you made a mistake, did n't you? A. Yes.

"Q. You made a mistake—the car was not far enough away. Before you started onto the track did you look to the north? A. I looked to the north ; yes, sir.

"Q. And before you started onto the track you looked to the south? A. Yes, sir.

"Q. After you started onto the track, when did you look to the south? A. Kept looking and listening all the time.

"Q. You saw the lights of the car which struck you before you started on? A. Yes, sir.

"Q. Did you watch that light all the time? A. I was looking right this way when she struck the wagon.

"Q. You were looking right at it when it struck the wagon? A. Yes, sir, and jerking and urging my team all the time to get across.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Or, if you had waited until the car went by, after you saw the headlight, you would not have been hurt, would you? A. No, I would not have got hurt.

"Q. You saw the headlight before you started upon the track, did n't you? A. Yes, sir.

"Q. And when you saw the headlight your team and wagon were entirely clear of the track, were they not? A. I turned them and was heading them on there.

"Q. But when you first saw the headlight of this car neither your horses nor your wagon were upon the track, were they? A. No, they were not upon the track.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. How far were your horses away from the track when you first saw this headlight? A. Driving right alongside of the track ; going right alongside of the track.

"Q. How many feet from it? A. I can't tell you how many feet.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

. Railway Co. v. Slayman.

"Q. How many feet was the outside rail of that track from the street curb ? A. I could n't tell you.

. . . . . . . . . . . . . . .

"Q. Well, there was plenty of room between the outside rail and the street curb for you to drive along, was n't there ? A. Yes, but there was better road the other side."

These extracts from the testimony of the witness are the most favorable to the railway company, and some of them were qualified by other statements of that witness ; but, waiving this consideration, we do not think that this testimony so conclusively proves the negligence of plaintiff below as to justify the court in declaring, as a matter of law, that such plaintiff, by reason of his negligence, could not recover in the action.

It needs no citation of authorities to prove that persons traveling upon a public street along or across a street-railway are not held to the exercise of the same degree of care as when traveling along or upon or across an ordinary railroad. The trains of the former, being propelled by cable or electricity and being short and light, are usually under control of those in charge, and may be readily stopped by proper use of the appliances with which they are equipped, while as to the latter all of these conditions are absent. Such streets are intended for public travel, and one who drives a team upon them has the same right to use them as has the street-railway company, subject, always, to the duty imposed by necessity upon such driver to turn out for and not unnecessarily obstruct the cars, and to use proper care to avoid colliding therewith. For that reason such driver may not undertake to cross the tracks of a street-railway company so near a moving car as to impede its passage or incur

danger of collision, but even if he does do so in viola-
tion of his duty, and those in charge of the car dis-
cover his danger, it is incumbent upon them to check
its speed, and, if possible, avoid an accident.  If to
the driver of a vehicle there reasonably appears to be
sufficient time for him to cross the track before a mov-
ing car will, while running at its ordinary speed, ar-
rive at the place of crossing, and if, in good faith, and
in the exercise of due care he attemps so to cross in
front of such car, it cannot be said, as a matter of
law, that he is so far negligent in making such at-
tempt that he cannot recover, should an accident
occur because the car was running much faster than
usual, and because no effort was made by those in
charge of it to prevent disaster.

It is hardly necessary to say that the degree of
watchfulness and caution requisite in any case to con-
stitute ordinary care must be commensurate with and
measured by the danger to be avoided.  Here it is
evident that plaintiff below misjudged the distance as
well as the velocity of the car; still, as the circum-
stances were such that he might easily have been
misled, and as the testimony fully justifies the con-
clusions which the jury undoubtedly reached—that
the car was moving with unnecessary and reckless
celerity, and no effort whatever was made to stay its
course or save plaintiff below from injury—the court
did not err in refusing to take the case away from the
jury and direct a verdict in favor of the company.

Although not in terms so stated in their brief, the
chief objection of counsel for the street-railway com-
pany to the instructions grows out of the failure of
the court to assume that the plaintiff below saw the
car before he turned his team upon the track.  It will
be noted that such plaintiff testified that he did not

see the car, but saw a light which he took to be the headlight of a car moving toward him.  We think, under the circumstances, that the court would have been justified in regarding that statement of the witness as tantamount to an admission that he saw the car ; still it was not error for the court to submit to the jury the question as to whether he did, in fact, see the car, when he in terms denied having done so. However, this matter is unimportant, for the court plainly told the jury that "if the plaintiff would have avoided the injury which he received by the exercise of reasonable care and diligence, and he failed to exercise such reasonable care and diligence, and thereby directly contributed to the cause which produced his injury," they should render a verdict for the defendant. In other instructions than the one from which we have just quoted, the court advised the jury that, if the plaintiff failed to exercise ordinary care to avoid a collision, he could not recover in the action.   The instructions which were in fact given were as favorable to the company as those which were requested by its counsel and refused by the court.   Every phase of negligence charged against either party was fairly submitted to the jury, and its general finding against the company must be regarded as exculpating plaintiff below, and finding the defendant guilty as charged.

Upon all the essential matters in controversy there was evidence tending to support the verdict of the jury.   It is not claimed that the damages allowed were excessive.   The judgment is affirmed.

Doster, C. J., Smith, Greene, JJ., concurring.